**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MIRABI, INC. d/b/a DOWN THE HATCH; M.B.R.P. REST. INC. d/b/a THE STUMBLE INN; THIRD AVE. REST., INC. d/b/a JAKE'S DILEMMA; 442 AMSTERDAM REST., CORP. d/b/a THE GIN MILL; MACDOUGAL REST. INC. d/b/a OFF THE WAGON; 149 SECOND AVE. REST. INC. d/b/a DOWNTOWN SOCIAL; 134 WEST 3RD ST REST INC. d/b/a 3 SHEETS; 168 ORCHARD ST PARTNERS, INC. d/b/a HAIR OF THE DOG; 587 KING STREET RESTAURANT LLC d/b/a UPTOWN SOCIAL; 23 ANN STREET RESTAURANT LLC d/b/a SHAREHOUSE; AND 414 WEST COLEMAN RESTAURANT LLC d/b/a BODEGA, on behalf of themselves and all others similarly situated, | Case No. |
| | **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| LAMB WESTON HOLDINGS, INC.; LAMB WESTON, INC.' LAMB WESTON BSW, LLC; LAMB WESTON/MIDWEST, INC.; LAMB WESTON SALES, INC.; MCCAIN FOODS LIMITED; MCCAIN FOODS USA, INC.; J.R. SIMPLOT CO.; CAVENDISH FARMS LTD; and CAVENDISH FARMS, INC., | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs Mirabi, Inc. d/b/a Down the Hatch; M.B.R.P. Rest. Inc. d/b/a The Stumble Inn;

Third Ave. Rest., Inc. d/b/a Jake's Dilemma; 442 Amsterdam Rest., Corp. d/b/a The Gin Mill;

Macdougal Rest. Inc. d/b/a Off the Wagon; 149 Second Ave. Rest. Inc. d/b/a Downtown Social;

134 West 3rd St Rest Inc. d/b/a 3 Sheets; 168 Orchard St Partners, Inc. d/b/a Hair of the Dog; 587 King Street Restaurant LLC d/b/a Uptown Social; 23 Ann Street Restaurant LLC d/b/a Sharehouse; and 414 West Coleman Restaurant LLC d/b/a Bodega (collectively, "Plaintiffs") on behalf of themselves and all others similarly situated, for their complaint, allege upon personal knowledge as to themselves and their own actions, and upon information and belief, including the investigation of counsel, as follows:

**<u>NATURE OF ACTION</u>**

1. This is an antitrust price-fixing class action brought against Defendants Lamb Weston Holdings, Inc.; Lamb Weston, Inc.; Lamb Weston BSW, LLC; Lamb Weston/Midwest, Inc.; Lamb Weston Sales, Inc.; McCain Foods Limited; McCain Foods USA, Inc.; J.R. Simplot Co. ("Simplot"); Cavendish Farms Ltd; and Cavendish Farms, Inc.[1] (collectively "Defendants") pursuant to Section 1 of the Sherman Act, 15 U.S.C. §§ 1, state antitrust laws; state consumer protection laws; and common law.

2. Plaintiffs are restaurants and other commercial dining businesses that purchase frozen potato products, such as French fries and tater tots, and prepare them in their own facilities to serve to customers as components of meals. This action is brought by Plaintiffs, on behalf of themselves and Classes of persons and entities who indirectly purchased from any Defendant or current or former subsidiary or affiliate, frozen potato products, including frozen French fries, hash browns, tater tots and other variants ("Frozen Potato Products") for their own business use in

---

[1] Lamb Weston Holdings, Inc., Lamb Weston, Inc., Lamb Weston BSW, LLC, Lamb Weston/Midwest, Inc., and Lamb Weston Sales, Inc. are herein collectively "Lamb Weston"; McCain Foods Limited and McCain Foods USA, Inc. are herein collectively "McCain", and Cavendish Farms Ltd and Cavendish Farms, Inc. are herein collectively "Cavendish."

commercial food preparation in the United States from at least January 1, 2021 through such time as the anticompetitive effects of Defendants' conduct ceases (the "Class Period").

3.      The Defendants are the four dominant processors of Frozen Potato Products sold in the United States.  Collectively, they control over 97% of this more than $68 million per year market.

4.      Leveraging that market control, beginning no later than 2021, Defendants conspired to raise, fix, stabilize or maintain prices above competitive levels during the Class Period. Rather than competing, this cartel of massive producers implemented lockstep price increases, announcing highly similar price raises very close in time to one another on a multitude of occasions.  Notably, they increased the price of their products even as their own costs significantly declined.

5.      In June of 2021, the former Vice President of International at Defendant Lamb Weston described the state of the market as "nirvana for the likes of Lamb Weston, Simplot and McCain," noting, "[t]hey have never ever seen margins this high in the history of the potato industry."  He credited the nirvana-like state to "consolidation of the industry," stating that they had "[a]bsolutely [] 100%" no incentive to compete, and adding that Defendants were "behaving themselves," rather than "killing each other's business at low margins."  Of course, that is the opposite of what competitors due, which is compete for customers, including with respect to price.

6.      Between July 2023 and June 2024, although sale volume remained flat, Frozen Potato Product sale prices increased by 14.6 percent.[2] Moreover, between July 2022 and July 2024, while input costs declined, the prices for Frozen Potato Products shot up 47 percent.  As an

---

[2] T.G. Lynn, *U.S. Frozen Potato Market Thrives Amid Challenges: Opportunities for Future Growth*, POTATOES NEWS, Oct. 23, 2024, available at https://potatoes.news/u-s-frozen-potato-market-thrives-amid-challenges opportunities-for-future-growth/.

example of the astonishing profitability of the scheme, in the first quarter of fiscal year 2024, Lamb Weston reported that its net income had increased by 111 percent over the same quarter in the preceding year.

7.      The chart below shows how Frozen Potato Product prices have soared -- even while the costs of producing them fell:



8.      The chart below sets forth the increases in Frozen Potato Product prices calculated by yearly average.[3]

---

[3] PotatoPro, *United States Potato Retail Sales See Double-Digit Increases July 2022 – June 2023*, (Aug. 6, 2023), https://www.potatopro.com/news/2023/united-states-potato-retail-sales-see-double-digit-increases-july-2022 %E2%80%93-june-2023.

| | DOLLAR SALES | | VOLUME SALES (FWE) | | PRICE PER POUND | |
|---|---|---|---|---|---|---|
| | Sales | % Change vs YA | Sales | % Change vs YA | Price | % Change vs YA |
| **FY23** | **$16.9 B** | **16.8%** ▲ | **13.2 B** | **-2.6%** ▼ | **$2.36** | **19.9%** ▲ |
| FY22 | $14.5 B | 6.6% | 13.5 B | -3.1% | $1.97 | 10.0% |
| FY21 | $13.6 B | 2.7% | 13.9 B | -1.0% | $1.79 | 3.8% |
| FY20 | $13.2 B | 11.4% | 14.0 B | 9.7% | $1.72 | 1.6% |
| FY19 | $11.9 B | 1.7% | 12.8 B | -1.2% | $1.70 | 2.9% |

| | Dollar Sales | Dollars % Change vs YA | % of Dollar Sales | Volume Sales (FWE) | Volume % Change vs YA | % of Volume Sales | Price per Pound | Price % Change vs YA |
|---|---|---|---|---|---|---|---|---|
| Potato Chips | $8,266,939,389 | 13.8% ▲ | 49% | 5,063,217,758 | -2.3% ▼ | 38% | $6.53 | 16.5% ▲ |
| Fresh Potatoes | $4,003,865,940 | 16.5% ▲ | 24% | 3,981,379,521 | -2.7% ▼ | 30% | $1.01 | 19.8% ▲ |
| Frozen Potatoes | $2,781,861,721 | 34.8% ▲ | 16% | 2,330,635,899 | -2.4% ▼ | 18% | $2.03 | 38.1% ▲ |
| Instant Potatoes | $691,809,191 | 15.3% ▲ | 4% | 910,611,769 | -5.2% ▼ | 7% | $4.56 | 21.7% ▲ |
| Refrigerated Potatoes | $765,765,685 | 4.6% ▲ | 3% | 531,126,572 | -2.6% ▼ | 1% | $2.88 | 7.3% ▲ |
| Deli-Prepared Sides | $368,172,758 | 3.9% ▲ | 5% | 258,204,219 | -3.1% ▼ | 6% | $4.42 | 7.2% ▲ |
| Canned Potatoes | $62,709,256 | 19.1% ▲ | 0.4% | 94,901,510 | 9.2% ▲ | 0.7% | $1.06 | 9.1% ▲ |
| **TOTAL** | **$16,941,123,940** | **16.8%** ▲ | | **13,170,077,247** | **-2.6%** ▼ | | **$2.36** | **19.9%** ▲ |

\* Fresh Weight Equivalent (FWE): Potato Chips 4:1, Fresh Potatoes 1:1, Frozen Potatoes 1.7:1, Instant Potatoes 6:1, Refrigerated potatoes 2:1, Deli-Prepared Sides 3.1:1, Canned Potatoes 1.6:1

9.     Due to Defendants' utter domination of the market and lockstep pricing, they had no need to worry that their customers would switch over to purchasing Frozen Potato Products from a less expensive competitor.  They were able to raise prices at will, and Plaintiffs and other Class members, having no other options, were forced to pay them.

10.     This conspiracy continues to this day, and Plaintiffs and all others similarly situated continue to be harmed by the anti-competitive, artificially high prices that Defendants have implemented.

**PARTIES**

**Plaintiffs**

11.     Plaintiff Mirabi, Inc. d/b/a Down the Hatch is a foodservice business with its primary place of business in New York, New York.  Plaintiff purchased Frozen Potato Products

indirectly from one or more Defendants in the State of New York during the Class Period for use in its commercial kitchen.

12.     Plaintiff M.B.R.P. Rest. Inc. d/b/a The Stumble Inn is a foodservice business with its primary place of business in New York, New York.  Plaintiff purchased Frozen Potato Products indirectly from one or more Defendants in the State of New York during the Class Period for use in its commercial kitchen.

13.     Plaintiff Third Ave. Rest., Inc. d/b/a Jake's Dilemma is a foodservice business with its primary place of business in New York, New York.  Plaintiff purchased Frozen Potato Products indirectly from one or more Defendants in the State of New York during the Class Period for use in its commercial kitchen.

14.     Plaintiff 442 Amsterdam Rest., Corp. d/b/a The Gin Mill is a foodservice business with its primary place of business in New York, New York.  Plaintiff purchased Frozen Potato Products indirectly from one or more Defendants in the State of New York during the Class Period for use in its commercial kitchen.

15.     Plaintiff Macdougal Rest. Inc. d/b/a Off the Wagon is a foodservice business with its primary place of business in New York, New York.  Plaintiff purchased Frozen Potato Products indirectly from one or more Defendants in the State of New York during the Class Period for use in its commercial kitchen.

16.     Plaintiff 149 Second Ave. Rest. Inc. d/b/a Downtown Social is a foodservice business with its primary place of business in New York, New York.  Plaintiff purchased Frozen Potato Products indirectly from one or more Defendants in the State of New York during the Class Period for use in its commercial kitchen.

17.     Plaintiff 134 West 3rd St Rest Inc. d/b/a 3 Sheets is a foodservice business with its primary place of business in New York, New York.  Plaintiff purchased Frozen Potato Products indirectly from one or more Defendants in the State of New York during the Class Period for use in its commercial kitchen.

18.     Plaintiff 168 Orchard St Partners, Inc. d/b/a Hair of the Dog is a foodservice business with its primary place of business in New York, New York.  Plaintiff purchased Frozen Potato Products indirectly from one or more Defendants in the State of New York during the Class Period for use in its commercial kitchen.

19.     Plaintiff 587 King Street Restaurant LLC d/b/a Uptown Social is a foodservice business with its primary place of business in Charleston, South Carolina.  Plaintiff purchased Frozen Potato Products indirectly from one or more Defendants in the State of South Carolina during the Class Period for use in its commercial kitchen.

20.     Plaintiff 23 Ann Street Restaurant LLC d/b/a Sharehouse is a foodservice business with its primary place of business in Charleston, South Carolina.  Plaintiff purchased Frozen Potato Products indirectly from one or more Defendants in the State of South Carolina during the Class Period for use in its commercial kitchen.

21.     Plaintiff 414 West Coleman Restaurant LLC d/b/a Bodega is a foodservice business with its primary place of business in Mount Pleasant, South Carolina.  Plaintiff purchased Frozen Potato Products indirectly from one or more Defendants in the State of South Carolina during the Class Period for use in its commercial kitchen.

**Defendants:**

**Lamb Weston**

22.     Defendant Lamb Weston Holdings, Inc. is incorporated in Delaware and

headquartered in Eagle, Idaho. It is a leading producer, distributor, and marketer of Frozen Potato Products to both individuals and businesses in the food service industry. It owns and operates several United States subsidiaries, including Lamb Weston, Inc. (a Delaware corporation), Lamb Weston BSW, LLC (a Delaware LLC), Lamb Weston/Midwest, Inc. (a Washington corporation), and Lamb Weston Sales, Inc. (a Delaware corporation).

23.     Lamb Weston is the second largest producer of branded Frozen Potato products in the world.  Its products include French fries, tater tots and hash browns. Approximately 86% of its products go to those, like Plaintiffs, in the food-service industry. On information and belief, Lamb Weston holds about 40% of the market share of Frozen Potato Products in the Relevant Market.

24.     Lamb Weston Holdings, Inc. is a publicly traded company.  Its stock is traded on the New York Stock Exchange with the ticker symbol, "LW."

25.     On information and belief, Lamb Weston Holdings, Inc., conducts its Frozen Potato Products business in the United States through the defendant subsidiaries, including manufacturing, pricing, and selling Frozen Potato Products in the United States.

26.     Defendant Lamb Weston sells its products in the United States, including, on information and belief, this district and the states of New York, New Hampshire, Arizona, Massachusetts, Connecticut, Nevada, Washington D.C., Florida, Alabama, and Illinois.


**Simplot**

27.     Defendant J.R. Simplot Company is incorporated in Nevada and has its principal place of business in Boise, Idaho.  Simplot is privately owned company and describes itself as one of the world's largest producers of French fries.  On information and belief, Simplot sells its products throughout the United States, including, in this district and the states of New York, New

Hampshire, Massachusetts, Arizona, Connecticut, Connecticut, Nevada, Washington D.C., Florida, Alabama, and Illinois.

**Cavendish**

28.     Defendant Cavendish Farms is a part of the J.D. Irving Group of Companies, with its headquarters in Dieppe, New Brunswick, Canada. It is North America's fourth largest processor of Frozen Potato Products.

29.     Defendant Cavendish Farms, Inc. is Cavendish Farms Ltd.'s United States-based subsidiary.  It is incorporated in the state of Delaware and has its primary United States office in Burlington, Massachusetts, and has a manufacturing plant in Jamestown, North Dakota.

30.     Defendant Cavendish sells Frozen Potato Products in the United States, including in this District and in the states of New York, New Hampshire, Massachusetts, Arizona, Connecticut, Connecticut, Nevada, Washington D.C., Florida, Alabama, and Illinois.

**McCain Foods**

31.     Defendant McCain Foods USA, Inc. is incorporated in the state of Maine and has its primary place of business in Oakbrook Terrace, Illinois.

32.     Defendant McCain Foods Limited is the parent company of Defendant McCain Foods USA, Inc.. McCain Foods Limited is a company existing under the laws of the Province of New Brunswick, Canada, with its principal place of business in Toronto, Ontario, Canada,

33.     McCain is one of the largest Frozen Potato Product manufacturers in the world and manufactures Frozen Potato Products at multiple locations in the United States.  On information and belief, it sells Frozen Potato Products throughout the United States, including in this District and in the states of New York, New Hampshire, Massachusetts, Arizona, Connecticut, Connecticut, Nevada, Washington D.C., Florida, Alabama, and Illinois.

34.     The foregoing Defendants (Lamb Weston, Simplot, Cavendish and McCain Foods) and their co-conspirators directly and through their affiliated entities sold Frozen Potato Products in the United States and in this District at artificially-inflated prices during the Class Period. Defendants are direct, horizontal competitors in the United States Frozen Potato Product market.

## AGENTS AND CO-CONSPIRATORS

35.     On information and belief, other corporations, partnerships, or business entities, currently unknown to Plaintiffs, are co-conspirators with Defendants in their unlawful restraints of trade.  Various persons that are not named as Defendants have participated as co-conspirators in the violations alleged herein and have performed acts and made statements in furtherance thereof.

36.     These other persons or entities have facilitated, adhered to, participated in, and/or communicated with others regarding the alleged conspiracy to raise prices of Frozen Potato Products and the anticompetitive and unduly restrictive exclusive dealing agreements addressed in this lawsuit.  Plaintiffs reserve the right to name some or all of these entities as Defendants at a later date.

## JURISDICTION AND VENUE

37.     This Court has federal question jurisdiction pursuant to the Sherman Act, 15 U.S.C. § 1, *et seq.*, and the Clayton Act, 15 U.S.C. §§ 15, 26; as well as 28 U.S.C. §§ 1331, 1337; and it has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

38.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) ("The Class Action Fairness Act") because sufficient diversity of citizenship exists between parties in this action, the aggregate amount in controversy exceeds $5,000,000, and there are 100 or more members of each of the Classes.

39.     Venue is proper in this district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. §§ 1391 (b)-(d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the Defendants are licensed to do business in, are doing business in, had agents in, or are found or transact business in California and this District.

40.     This Court has *in personam* jurisdiction over the Defendants because each, either directly or through the ownership and/or control of its subsidiaries, *inter alia*: transacted business in the United States, including in this District; directly or indirectly sold or marketed Frozen Potato Products throughout Illinois, including in this District; had substantial aggregate contacts with the United States as a whole, including in this District; or were engaged in anticompetitive conduct that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout Illinois, including in this District. Defendants also have purposefully availed themselves of the laws of the United States.

41.     Defendants' unlawful conduct described herein adversely affected persons and entities in California who purchased Frozen Potato Products, including Plaintiffs and the Classes.

## INTERSTATE COMMERCE

42.     Defendants manufactured and/or sold Frozen Potato Products in the United States in a continuous and uninterrupted flow of interstate commerce, including through and into this judicial district.

43.     Defendants' business activities substantially affected interstate commerce in the United States and caused antitrust injury throughout the United States.

44.     Together, Defendants make up over 97% of the United States Frozen Potato Products market.

## RELEVANT MARKET

45.     The relevant geographic market is the market for Frozen Potato Products in the United States.

46.     According to the National Potato Counsel, the total 2021 economic contribution of the potato sector was estimated at $100.9 billion.[4]  In 2022, approximately 39% of potatoes used in the United States went toward Frozen Potato Products.

47.     This market is highly concentrated.  Defendants control more than 97% of this market.  As of November 2023, Lamb Weston held a more than 40% share of the Frozen Potato Product Market, followed by McCain which held 30% of the market share, Simplot with 20%, and Cavendish with 7–8%.[5]

## ADDITIONAL FACTUAL ALLEGATIONS

### A.     Background

48.     Frozen Potato Products are a staple of the American diet, extraordinarily common on the tables of restaurants and homes across nation.  They include French fries, home fries, tater tots, and an array of other familiar meal staples.  One source found that nearly 580,000 restaurants in the United States offer French fries to their customers.[6]

49.     In addition to the Frozen Potato Products processed in the United States, some Frozen Potato Products are also imported into this country from Canada.  Defendants McCain and

---

[4] https://www.nationalpotatocouncil.org/newsroom/statistics/ (visited December 5, 2024).

[5] Morningstar, *Lamb Weston's Low-Cost Production and Solid Execution Capitalize on Continued Growth of Fries* (Nov. 20, 2023), https://www.morningstar.com/company-reports/1194572-lamb-westons-low-cost-production-and-solid-execution-capitalize-on-continued-growth-of-fries.

[6] French Fries Trends: Data and Analytics, https://tastwise.io/foodtrends/french-fries.

Cavendish import significant amounts of potato products from Canada into the United States each year.

50.     Defendants are the four largest sellers of Frozen Potato Products in the United States.  To conduct their businesses, they purchase raw potatoes from farmers and then process them in Defendants' own facilities.  There, the potatoes are washed, pealed, rid of remaining "eyes" and green portions, and cut into a variety of shapes and sizes.  Thereafter, they are blanched at high temperatures.  They are then put through a process to reduce excess moisture.  After that, they are frozen.

51.     The frozen potato pieces are then weighed, packaged, sealed, and the packages are printed with numbers identifying factories, lots and use-by dates.  Thereafter, they are grouped and prepared for shipping.  Finally, they are shipped for distribution.

52.     Restaurants, caterers, and other sellers of prepared food purchase Defendants' Frozen Potato Products indirectly from retailers.  They then cook, flavor, and otherwise prepare them in their own commercial kitchens.  They include them as components of fuller meals that they then sell to customers of their establishments.

53.     Since at least 2021, prices for these Frozen Potato Products in the United States were unfairly manipulated, as a direct result of Defendants' conspiracy.  Plaintiffs and the Classes were thus forced to pay artificially inflated prices for the Frozen Potato Products that they purchased indirectly from Defendants.

**B.     Defendants Engaged in an Anticompetitive Conspiracy**

54.     At least as early as January 2021 – and continuing to the present – Defendants have engaged in a coordinated conspiracy to fix the prices of Frozen Potato Products manufactured, imported into, distributed, and/or sold in the United States.  On information and belief, to facilitate this conspiracy, they exchanged detailed nonpublic competitive information and used it to increase

prices in lock-step.

55.     Their prices increased in 2021, rose even more sharply in 2022, and remained elevated in 2024.   The increases resulted in unprecedented margins for Defendants.

56.     Time and again, Defendants announced identical or virtually identical price increases simultaneously, or nearly simultaneously with one another.

57.     In January of 2021, both Simplot and McCain sent price increase letters to their customers, just a day apart, indicating that they were raising their prices for Frozen Potato Products $0.04 per pound. Lamb Weston did not make an official announcement of price increase at that time, but, on information and belief, also did raise its prices contemporaneously.

58.     In February of 2021, Defendant McCain announced a price increase that was soon followed by J.R. Simplot and Cavendish Farms.

59.     In May of 2021, Defendants Lamb Weston and McCain sent price increase letters within two weeks of each other. Lamb Weston's letter announced a price increase of $0.08 per pound, effective July 1, 2021, and McCain's letter announced a price increase of by $0.04 per pound, effective July 15, 2021.  On June 4, 2021, Cavendish sent letters indicating that it too would increase prices by $0.04 per pound, effective, like McCain's identical price increase, on July 15, 2021.

60.     In a June 2021 interview, a former VP of Lamb Weston stated that "I expect there to be a price increase announced by Lamb Weston probably in September of this year. And it will probably be exactly the price increase that McCain wanted … they will announce a price increase. And they hope that McCain will follow and Simplot will follow and Cavendish will follow. So I think before the year-end, there will be a price increase. And they'll justify the price increase."

61.     In October of 2021 -- close in time to what that former executive predicted -- Lamb

Weston, McCain, and Cavendish each sent price increase letters within five days of each other. Each of those letters indicated that the cost of the respective competitor's Frozen Potato Products would increase by the exact same $0.08 per pound. Each competitor's increase was announced with the exact same effective date -- December 15, 2021.

62.     The following year, the coordinated price increases came fast and frequently. To begin, on February 11, 2022, Lamb Weston announced that it would increase prices on "battered and coated" products by 12 cents per pound and add 10 cents per pound on nonbattered Products. These changes were to take effect in April 2022.

63.     On February 15, 2022, a mere four days after Lamb Weston's announcement, Simplot announced identical increases in price for the same two categories of products, and McCain announced a 12 cent per pound increase on all its frozen potato products.

64.     The next day, on February 16, 2022, Cavendish revealed that it was increasing *its* prices by 12 cents per pound for battered and coated frozen potatoes and "formed items," as well as non-battered frozen potatoes

65.     Defendants Simplot, McCain, and Cavendish all announced that their price increases would be effective, like the ones announced by Lamb Weston, in April 2022.

66.     The lockstep nature of these changes did not go unrecognized by restaurant owners. On April 19, 2022, the owner of Ivey and Coney, a restaurant based in Washington, D.C., posted on X (formerly Twitter) that the Defendants had informed it of uniform price increases, all effective on April 4, 2022. The owner's post said, "Amazing how all of the major suppliers for French Fries and the like are all raising their prices at the same time and by the same amount." The

post added, "Totally not collusion or anything, right?"[7]

67.    Defendants' April 2022 price increases lined up in the following manner:

| Price Increases for Frozen Potato Products, Effective April 4, 2022 | | | | | |
|---|---|---|---|---|---|
| | Potato Products | Coated Potatoes | Roasted/Vegetable; Products | Sweet Potato Products | Onion/Onion Rings |
| Lamb Weston | 0.12 | 0.12 | 0.12 | 0.12 | |
| McCain | 0.12 | 0.12 | 0.12 | 0.12 | 0.23 |
| Cavendish | 0.12 | | 0.15 | | 023 |
| Simplot | 0.12 | 0.12 | 0.15 | 0.12 | |

68.    On April 8, 2022, Cavendish sent a price increase letter stating that, effective May 15, 2022, the price of frozen potatoes would go up by $0.07 per pound.

69.    On information and belief, in May and July of 2022, Simplot increased prices again and Lamb Weston made a similar increase in July 2022.

70.    Further, on information and belief, in 2022, in furtherance of the conspiracy, McCain effectively backed out of its contractual promises and increased all prices to a 30 percent margin, regardless of the amount of time left on such contracts.  This was a huge margin that they would not have been able to capture if they had to compete on price.

71.    In 2023, Simplot's director of sales solutions noted that Lamb Weston took 35 percent in price increases and stated that Simplot, McCain, and Cavendish were also continuing to "push pricing" and "not go[] after new business."

---

[7] Tweet, insta@ivyconey, X (April 19, 2022),
https://x.com/ivyandconey/status/1516525216641466368 (last accessed Dec. 5, 2024)

72.     That same year, a Former Senior Director of Global Portfolio Optimization at McCain Foods said that he had wanted to be more aggressive in competition with Lamb Weston, but that "higher ups in the room [had concerns]. And we're just going to screw it up for everyone. So we shouldn't risk it."

73.     Were the market for Frozen Potato Products competitive, when one competitor increased prices, the others would consider it an opportunity to obtain new customers by lowering their own prices.  Competition would prevent one competitor from exceeding certain price margins without losing customers when another competitor offered lower prices.  This did not happen here. Instead, Defendants collusively and coordinatedly increased their prices, insulating themselves from competitive risk, and isolating their customers from the beneficial prices that would have been reached through competition.

**C.     The Frozen Potato Products Market Is Conducive to Collusion**

74.     The Frozen Potato Products market is structured and characterized in such a way as to be highly conducive to conspiracy.  It is extremely concentrated, with Defendants controlling more than 97% of market share.  This means that there are fewer alternative sources to which purchasers may turn to seek better prices.  It also simplifies the process for Defendants of reaching and monitoring a collusive agreement.

75.     Defendants have myriad opportunities to share sensitive information that facilitates collusion.  Indeed, all Defendants participate in PotatoTrac, a service provided by Circana, LLC, a market research and tracking company.  The Defendants are Potato Trac's only commercial clients.  Defendants either sell to or supply Circana with their data, and PotatoTrac then sends the Defendants one another's market share information so that each knows where they and their competitors are positioned in the industry. On information and belief, PotatoTrac also includes company projections. This shared information helps facilitate Defendants' conspiracy.

76.     There are numerous barriers to entry into the Frozen Potato Products market. Start-up costs are very high, and constructing processing plants takes significant time and money. Moreover, Defendants already have relationships with the vast majority of potato growers in the best potato growing area.  Defendants thus are able to raise prices without fear of being undercut by new entrants into the market.

77.     In contrast to Defendants' high concentration, the members of the buy-side of this market, including restaurant owners like Plaintiffs, have traditionally been fragmented and diffuse.  This makes it more difficult for them to monitor and respond to producers' actions.

78.     Frozen Potato Products are commodity products.  While there are different varieties of Frozen Potato Products, within each type of frozen potato product, each variety is sold at similar quality, in similar sizes, with similar shelf life, for similar purposes.  As a result, consumers such as Plaintiffs are more likely to be influenced by price when making a purchasing decision.

79.     Demand for Frozen Potato Products is also inelastic.  Potato products are such an essential part of the American diet, with frozen French fries, for example, being a ubiquitous part of the American restaurant meal, that even when prices increase significantly, demand only decreases by a small degree.

80.     There are also no economically reasonable substitutes for Frozen Potato Products. Potential substitutes, such as fresh potato products have different storage requirements than frozen ones and require significant cost, space and time for extensive additional preparation (such as washing and peeling) before consumption.  This, too, contributes to the collusion-conductivity of the market.

## PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY

81.    Defendants' anticompetitive conduct had the following effects, among others:

    a.    Price competition has been restrained or eliminated with respect to Frozen Potato Products sold in the United States;

    b.    The prices of Frozen Potato Products sold in the United States have been fixed, raised, maintained, or stabilized at artificially inflated levels;

    c.    Indirect purchasers of Frozen Potato Products have been deprived of free and open competition; and

    d.    Indirect purchasers of Frozen Potato Products paid artificially inflated prices.

82.    By reason of the alleged violations of the antitrust laws and other laws alleged herein, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for Frozen Potato Products than they would have paid in the absence of the Defendants' illegal conduct, because the Defendants, having decided to manipulate the market and issue prices in lockstep, eliminating incentive for competition on price, quality, service and other customer benefits.  As a result, Plaintiffs and all members of the Classes have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## FRAUDULENT CONCEALMENT AND THE TOLLING OF THE STATUTE OF LIMITATIONS

83.    Much of the conduct at issue undoubtedly occurred within the various applicable statutes of limitation.  No tolling is required for those claims.

84.    Defendants also continued to commit their antitrust violations within applicable periods of limitation.  They continued to issue price increases in lockstep over a multi-year period. In addition, each sale of Frozen Potatoes made to Plaintiff or the putative Classes that was

artificially inflated as a result of the conspiracy also constituted a new, overt act that restarted the statute of limitations. For each of these reasons, it is clear that Defendants have committed overt and continuing acts in furtherance of their conspiracy and their antitrust violation within any applicable period of limitations.

85.     Moreover, throughout the Class Period, Defendants affirmatively and fraudulently concealed their unlawful conduct from discovery by Plaintiffs, including using misrepresenting reasons for their increase of prices. Because the alleged conspiracy was affirmatively concealed by Defendants and their co-conspirators, Plaintiffs had no knowledge of the alleged conspiracy or any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed.

86.     As a result of Defendants' and their co-conspirators' fraudulent concealment of the conspiracy, the running of any statutes of limitations has been tolled with respect to Plaintiffs' claims of anticompetitive or unfair business practice conduct alleged in this Complaint.

## CLASS ACTION ALLEGATIONS

87.     Plaintiffs bring this action, first, on behalf of themselves and as a class action under Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), seeking damages, equitable and injunctive relief on behalf of a class of the following persons seeking injunctive relief under the Sherman Act:

> All persons and entities who indirectly purchased in the United States, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, Frozen Potato Products from January 1, 2021 through the present (the "Class Period") for their own business use in commercial food preparation (the "Nationwide Injunctive Relief Class");

88.     Plaintiffs also bring this action on behalf of themselves and classes and subclasses of purchasers from the Indirect Purchaser States (defined herein) under Rule 23(a) and (b)(3), seeking damages pursuant to state antitrust and consumer protection laws as well as common law

- 20 -

unjust enrichment on behalf of the following class ("Damages Class"):

> All persons and entities who indirectly purchased in one of the Indirect Purchaser States, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, Frozen Potato Products from January 1, 2021 through the present (the "Class Period") for own business use in commercial food preparation;

89. The "Indirect Purchaser States," for purposes of this Complaint, include Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, West Virginia, and Wisconsin.

90. Plaintiffs also bring this action on behalf of state-based subclasses of purchasers in the Damages Class. For example, the Arizona Subclass includes: All persons and entities who indirectly purchased in Arizona, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, Frozen Potato Products from January 1, 2021 through the present (the "Class Period") for their own business use in commercial food preparation. Similar subclasses are hereby alleged for each Indirect Purchaser State.

91. The Nationwide Injunctive Class and the Damages Class are referred to herein as the "Classes" unless otherwise indicated.

92. The class definitions specifically excludes the following persons or entities: (a) any of the Defendants named herein; (b) any of the corporate Defendants' parent companies, subsidiaries, and affiliates; (c) any of the Defendants' officers, directors, management, employees, subsidiaries, affiliates or agents; (d) all governmental entities; (e) the judges and chambers staff in this case, as well as any members of their immediate families; and (f) all jurors assigned to this case.

93.     Plaintiffs do not know the exact number of members of the Classes, but due to the nature of the trade and commerce involved, there are millions of members of the Classes geographically dispersed throughout the United States, such that joinder of all members of the Classes in the prosecution of this action is impracticable.

94.     Plaintiffs' claims are typical of the claims of their fellow members of the Classes because Plaintiffs purchased Frozen Potato Products for use in their business or organization indirectly from a Defendant.  Plaintiffs and all members of the Classes were damaged in the same manner by the same wrongful conduct of Defendants as alleged herein, and the relief sought herein is common to all members of the Classes.

95.     Numerous questions of law or fact common to all members of the Classes— including, but not limited to those identified below—arise from Defendants' anticompetitive and unlawful conduct:

(a)     Whether the Defendants and their co-conspirators engaged in a combination and conspiracy to fix, raise, maintain or stabilize the prices of Frozen Potato Products sold in the United States;

(b)     The identity of the participants of the alleged conspiracy;

(c)     The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)     Whether Defendants' alleged conduct violated the Sherman Act;

(e)     Whether Defendants' alleged conduct violated the laws of the Indirect Purchaser States;

(f)     Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

(g)     The effect of Defendants' alleged conduct on the prices of Frozen Potato Products sold in the United States during the Class Period;

(h)     The appropriate relief for the Classes, including injunctive and equitable relief.

96.     These and other questions of law and fact are common to the Classes and predominate over any questions affecting the members of the Classes individually.

97.     Plaintiffs will fairly and adequately represent the interests of the Classes because they purchased Frozen Potato Products indirectly from Defendants within the United States and Indirect Purchaser States during the Class Period and have no conflicts with any other members of the Classes.  Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

98.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

99.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including

providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

100. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

101. Plaintiffs know of no difficulty likely to be encountered in the maintenance of this action as a class action under Federal Rule of Civil Procedure 23.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1**
**(By All Plaintiffs On Behalf of Nationwide Injunctive Relief Class)**

102. Plaintiffs repeat and reassert each of the allegations contained in the preceding paragraphs as if fully set forth herein.

103. Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy to artificially fix, raise, maintain and/or stabilize the prices of Frozen Potato Products within the United States, its territories, and the District of Columbia in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

104. Defendants' anticompetitive acts were intentionally directed at the United States market for Frozen Potato Products and had a substantial and foreseeable effect on interstate commerce by raising and fixing Frozen Potato Products prices throughout the United States.

105. The contract, combination or conspiracy had the following direct, substantial, and reasonably foreseeable effects upon commerce in the United States and upon import commerce:

- 24 -

a. prices charged to, and paid by, Plaintiffs and members of the Classes were artificially raised, fixed, maintained, or stabilized at supracompetitive levels;

b. Plaintiffs and members of the Classes have been deprived of the benefits of free, open and unrestricted competition in the Frozen Potato Products market in the United States;

c. competition in establishing prices paid for Frozen Potato Products has been unlawfully restrained, suppressed, or eliminated;

106. Defendants and their co-conspirators' anticompetitive activities have directly and proximately caused injury to Plaintiffs and members of the Classes in the United States.

107. As a direct, foreseeable, and proximate result of Defendants' anticompetitive conduct, Plaintiffs and the Classes have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and the Classes seek injunctive relief.

### SECOND CLAIM FOR RELIEF
**Violation of Arizona's Uniform State Antitrust Act,**
**Ariz. Rev. Stat. § 44-1401, _et seq._**
**(on behalf of the Arizona Subclass)**

108. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

109. During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

110. The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially

supra-competitive prices for Frozen Potato Products in the United States.

111.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

i.      participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

ii.     participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

112.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

113.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

114.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, et seq.

i.      The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Arizona; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class were deprived

of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Frozen Potato Products.

ii.    During the Class Period, the Defendants' illegal conduct substantially affected Arizona commerce.

iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

115.    By reason of the foregoing, the Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, et seq. Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

**THIRD CLAIM FOR RELIEF**
**Violation of California's Cartwright Act,**
**Cal. Bus. & Prof. Code § 16700, *et seq.***
**(on behalf of the California Subclass)**

116.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

117.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

118.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

119.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

  i. participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

  ii. allocating products in the United States in furtherance of their agreements; and

participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

120. The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

121. The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

122. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq.*

  i. During the Class Period, the Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. The Defendants have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Frozen Potato Products at supra-competitive levels; to prevent competition in the sale of Frozen Potato Products; and to pool, combine,

and directly and indirectly unite their interests connected with the sale of Frozen Potato Products to elevate the price at which Frozen Potato Products are sold.

ii.   The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, Frozen Potato Products.

iii.   For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and the following: (1) Fixing, raising, stabilizing, and pegging the price of Frozen Potato Products; and (2) Allocating among themselves the production of Frozen Potato Products.

iv.   The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) price competition in the sale of Frozen Potato Products has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for Frozen Potato Products sold by the Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) those who purchased Frozen Potato Products directly or indirectly from the Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

v.      By virtue of the conduct alleged herein, the Defendants have entered into contracts, in concerted action with others, where the effect of such contract was to substantially lessen competition in a line of trade or commerce in California in violation of Section 16720, *et seq.*

123.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property in that they paid more for Frozen Potato Products than they otherwise would have paid in the absence of the Defendants' unlawful conduct. As a result of the Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

**FOURTH CLAIM FOR RELIEF**
**Violation of the Colorado State Antitrust Act Colo. Rev. Stat. §§ 6-4-101, *et seq.***
**(on behalf of the Colorado Subclass)**

124.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

125.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

126.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

127.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

      i.      participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

      ii.     allocating products in the United States in furtherance of their agreements; and

     iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

128.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

129.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

130.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of Colo. Rev. Stat. §§ 6-4-101 *et seq.*

      i.      Colorado's legislature conferred broad standing under the Colorado State Antitrust Act of 2023 based on an important principle of protecting the public from anticompetitive behavior and of promoting competition in the marketplace. Colo. Rev. Stat. § 6-4-102.

ii.   Under that Act, indirect purchasers have standing to maintain an action for damages based on the facts alleged in this Complaint. Colo. Rev. Stat. § 6-4-115.

iii.  Every contract, combination, or conspiracy in restraint of any part of trade or commerce is illegal. Colo. Rev. Stat. § 6-4-104.

iv.   Defendants made contracts or engaged in a combination or conspiracy with each other by maintaining, limiting, or discontinuing the production, manufacture, sale, or supply of Frozen Potato Products for the purpose of, and which had the desired effect of, fixing, controlling, or maintaining prices for Frozen Potato Products within the intrastate commerce of Colorado.

v.    Plaintiffs purchased Frozen Potato Products within the State of Colorado during the Class Period. But for Defendants' conduct set forth herein, the price of Frozen Potato Products would have been lower, in an amount to be determined at trial.

vi.   Plaintiffs and members of the Class were injured with respect to purchases of Frozen Potato Products in Colorado and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees and costs, and injunctive relief under Colo. Rev. Stat. §§ 6-4-101 *et seq.*.

**FIFTH CLAIM FOR RELIEF**
**Violation of the Connecticut Antitrust Act**
**Connecticut General Statutes §§ 35-24 *et seq.***
**(on behalf of the Connecticut Subclass)**

131.  Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

132.  During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products

in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

133.     The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

134.     In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

    i. participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

    ii. allocating products in the United States in furtherance of their agreements; and

    iii. participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

135.     The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

136.     The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

137.     The Defendants have entered into an unlawful agreement in restraint of

trade in violation of Connecticut General Statutes § 35-26.

    i.    Connecticut's legislature conferred broad standing under Antitrust Act based on an important principle of protecting the public from anticompetitive behavior and of promoting competition in the marketplace.

    ii.    Under the Connecticut Antitrust Act, indirect purchasers have standing to maintain an action for damages based on the facts alleged in this Complaint. Conn. Gen. Stat. § 35-46a.

    iii.    Every contract, combination, or conspiracy in restraint of any part of trade or commerce is unlawful. Conn. Gen. Stat. § 35-26.

    iv.    Every contract, combination, or conspiracy that has the purpose of effect of fixing, controlling, or maintaining prices in any part of trade or commerce; or of fixing, controlling, maintaining, limiting, or discontinuing the production, manufacture, sale, or supply of any part of trade or commerce, is also unlawful. Conn. Gen. Stat. § 35-28.

    v.    Defendants made contracts or engaged in a combination or conspiracy with each other by maintaining, limiting, or discontinuing the production, manufacture, sale, or supply of Frozen Potato Products for the purpose of, and which had the desired effect of, fixing, controlling, or maintaining prices for Frozen Potato Products within the intrastate commerce of Connecticut.

    vi.    Plaintiffs purchased Frozen Potato Products within the State of Connecticut during the Class Period. But for Defendants' conduct set forth herein, the price of Frozen Potato Products would have been lower, in an amount to be determined at trial.

vii. Plaintiffs and members of the Class were injured with respect to purchases of Frozen Potato Products in Connecticut and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees and costs, and injunctive relief under Conn. Gen. Stat. §§ 35-24 *et seq*.

**SIXTH CLAIM FOR RELIEF**
**Violation of the District of Columbia Antitrust Act,**
**D.C. Code § 28-4501, *et seq*.**
**(on behalf of the District of Columbia Subclass)**

138. Plaintiff incorporates by reference the allegations in the preceding paragraphs

139. During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

140. The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

141. In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

i. participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiff and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

ii. allocating products in the United States in furtherance of their agreements; and

iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

142.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

143.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

144.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code § 28-4501.

i.     The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

ii.    During the Class Period, the Defendants' illegal conduct substantially affected District of Columbia commerce.

iii.   As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

145. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

**SEVENTH CLAIM FOR RELIEF**
**Violation of the Illinois Antitrust Act,**
**740 Ill. Comp. Stat. Ann. 10/1, *et seq.***
**(on behalf of the Illinois Subclass)**

146. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

147. During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

148. The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

149. In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

  i. participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

  ii. allocating products in the United States in furtherance of their

agreements; and

iii. participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

150. The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

151. The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

152. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act, Ill. Comp. Stat. 10/1, *et seq* .

i. The Illinois Antitrust Act prohibits any contract, combination or conspiracy to fix prices, limit production, or allocate markets. 740 Ill. Comp. Stat. 10/3.

ii. Plaintiffs purchased Frozen Potato Products within the State of Illinois during the Class Period. But for Defendants' conduct set forth herein, the price for Frozen Potato Products would have been lower, in an amount to be determined at trial.

iii. Under the Illinois Antitrust Act, indirect purchasers have standing to maintain an action for damages based on the facts alleged in this Complaint. 740 Ill. Comp. Stat. 10/7(2).

iv. Defendants made contracts or engaged in a combination or conspiracy with each other, though they would have been competitors but for their

prior agreement, for the purpose of fixing, controlling, or maintaining prices for Frozen Potato Products sold, and/or for allocating products within the intrastate commerce of Illinois.

153. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of 740 Ill. Comp. Stat.10/3. Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under the Illinois Antitrust Act.

**EIGHTH CLAIM FOR RELIEF**
**Violation of the Iowa Competition Law**
**Iowa Code § 553.1, *et seq.***
**(on Behalf of the Iowa Subclass)**

154. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

155. During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

156. The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

157. In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

    i. participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiff and members of the Damages Class with respect to Frozen Potato Products sold in the

United States;

ii.    allocating products in the United States in furtherance of their agreements; and

iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

158.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

159.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

160.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq.*

i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Iowa; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra- competitive, artificially inflated prices for Frozen Potato Products.

ii.    During the Class Period, the Defendants' illegal conduct substantially affected Iowa commerce.

iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

iv.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

<u>**NINTH CLAIM FOR RELIEF**</u>
**Violation of the Kansas Restraint of Trade Act**
**Kan. Stat. Ann. § 50-101, *et seq.***
**(on behalf of the Kansas Subclass)**

161.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

162.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

163.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

164.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiff and members of

the Damages Class with respect to Frozen Potato Products sold in the United States;

ii.    allocating products in the United States in furtherance of their agreements; and

iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

165.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

166.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

167.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Stat. §§ 50-101, *et seq.*

i.    During the Class Period, the Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Kansas Stat. § 50-101. The Defendants have acted in violation of § 50-101 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Frozen Potato Products at supra- competitive levels; to prevent competition in the sale of Frozen Potato Products; and to pool, combine, and directly unite their interests in connection with the sale of Frozen Potato Products to elevate the price at which Frozen Potato Products are sold.

ii.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

iii.    During the Class Period, the Defendants' illegal conduct substantially affected Kansas commerce.

iv.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

168.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

## TENTH CLAIM FOR RELIEF
### Violation of the Maine's Antitrust Statute,
### Me. Rev. Stat. Ann. tit. 10 § 1101, *et seq.*
### (and on behalf of the Maine Subclass)

169.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

170.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state

antitrust and other statutes set forth below.

171.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

172.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

> i.     participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiff and members of the Damages Class with respect to Frozen Potato Products sold in the United States;
>
> ii.    allocating products in the United States in furtherance of their agreements; and
>
> iii.   participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

173.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

174.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

175.    The Defendants have entered into an unlawful agreement in restraint of trade in

violation of the Maine Revised Statutes, Me. Rev. Stat. tit. 10, §§ 1101, *et seq.*

  i.  The Defendants entered into a combination in restraint of trade in violation of Me. Rev. Stat. tit. 10, § 1101.

  ii.  The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Maine; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

  iii.  During the Class Period, the Defendants' illegal conduct substantially affected Maine commerce.

  iv.  As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

176. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Me. Rev. Stat. tit. 10, §§ 1101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Me. Rev. Stat. tit. 10, §§ 1101, *et seq.*

**<u>ELEVENTH CLAIM FOR RELIEF</u>**
**Violation of the Maryland Antitrust Act**
**Maryland Code, Com. Law § 11-201, *et seq***
**(on Behalf of the Maryland Subclass)**

177. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

178.   During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

179.   The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

180.   In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

      i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiff and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

      ii.    allocating products in the United States in furtherance of their agreements; and

      iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

181.   The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

182.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

183.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maryland Antitrust Act, Maryland Code, Com. Law § 11-204, *et seq.*

       i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Maryland; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maryland; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

      ii.    During the Class Period, the Defendants' illegal conduct substantially affected Maryland commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

184.    By reason of the foregoing, Defendants have entered into an agreement in restraint of trade in violation of the Maryland Antitrust Act. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Maryland Code, Com. Law § 11-201, *et seq.*

<u>**TWELFTH CLAIM FOR RELIEF**</u>
**Violation of the Michigan Antitrust Reform Act**
**Mich. Comp. Laws § 445.771, *et seq.***
**(on behalf of the Michigan Subclass)**

185.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

186. During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

187. The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

188. In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

      i. participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

      ii. allocating products in the United States in furtherance of their agreements; and

      iii. participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

189. The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

190. The Defendants' anticompetitive acts described above were knowing and willful and constitute violations and/or flagrant violations of the following state antitrust statutes.

191. The Defendants have entered into an unlawful agreement in restraint of trade in violation of Mich. Comp. Laws §§ 445.771, *et seq.*

       i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

      ii.    During the Class Period, the Defendants' illegal conduct substantially affected Michigan commerce.

      iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

192. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

**THIRTEENTH CLAIM FOR RELIEF**
**Violation of the Minnesota Antitrust**
**Law, Minn. Stat. § 325D.49, *et seq.***
**(on behalf of the Minnesota Subclass)**

193.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

194.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

195.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

196.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

      i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

      ii.    allocating products in the United States in furtherance of their agreements; and

      iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

197.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize

prices and to allocate products.

198.     The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

199.     The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq.*

i.     The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Frozen Potato Products.

ii.     During the Class Period, the Defendants' illegal conduct substantially affected Minnesota commerce.

iii.     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

200.     By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

<u>**FOURTEENTH CLAIM FOR RELIEF**</u>
**Violation of the Mississippi Antitrust Statute,**

- 51 -

**Miss. Code Ann. § 75-21-1, *et seq.*
(on behalf of the Mississippi Subclass)**

201.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

202.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

203.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

204.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

> participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

> iv.    allocating products in the United States in furtherance of their agreements; and

> v.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

205.    The Defendants and their co-conspirators engaged in the actions described above

for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

206.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

207.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq.*

> The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Frozen Potato Products.

vi.    During the Class Period, the Defendants' illegal conduct substantially affected Mississippi commerce.

vii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

viii.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §§ 75-21-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mississippi Code Ann. §§ 75-21-1, *et seq.*

## FIFTEENTH CLAIM FOR RELIEF
### Violation of the Nebraska Junkin Act,
### Neb. Rev. Stat. § 59-801, *et seq.*,
### (on Behalf of the Nebraska Subclass)

208.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

209.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

210.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

211.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

   i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

   ii.    allocating products in the United States in furtherance of their agreements; and

   iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

212.   The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

213.   The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

214.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

   i.   The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

   ii.   During the Class Period, the Defendants' illegal conduct substantially affected Nebraska commerce.

   iii.   As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

215.   By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised

Statutes §§ 59-801, *et seq.*

## SIXTEENTH CLAIM FOR RELIEF
### Violation of the Nevada Unfair Trade Practices Act,
### Nev. Rev. Stat. § 598A.010, *et seq.*
### (on Behalf of the Nevada Subclass)

216.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

217.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

218.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

219.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

>   i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;
>
>   ii.    allocating products in the United States in furtherance of their agreements; and
>
>   iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the

- 56 -

unlawful agreements they reached.

220. The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

221. The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

222. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

      i. The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

      ii. During the Class Period, the Defendants' illegal conduct substantially affected Nevada commerce.

      iii. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

223. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.* Accordingly, Plaintiffs and

members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

**SEVENTEENTH CLAIM FOR RELIEF**
**Violation of New Hampshire's Antitrust Statute,**
**N.H. Rev. Stat. Ann. tit. XXXI, § 356:1, *et seq.***
**(on behalf of the New Hampshire Subclass)**

224. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

225. During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

226. The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

227. In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

    i. participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

    ii. allocating products in the United States in furtherance of their agreements; and

    iii. participating in meetings and conversations among themselves in the

United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

228.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

229.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

230.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq.*

      i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

      ii.    During the Class Period, the Defendants' illegal conduct substantially affected New Hampshire commerce.

      iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

231.    By reason of the foregoing, the Defendants have entered into agreements in restraint

of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

**EIGHTEENTH CLAIM FOR RELIEF**
**Violation of the New Mexico Antitrust Act,**
**N.M. Stat. Ann. §§ 57-1-1, *et seq.***
**(on behalf of the New Mexico Subclass)**

232.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

233.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

234.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

235.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

      i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

      ii.    allocating products in the United States in furtherance of their agreements; and

      iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

236.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

237.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

238.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

      i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

      ii.    During the Class Period, the Defendants' illegal conduct substantially affected New Mexico commerce.

      iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

239.     By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

<u>NINETEENTH CLAIM FOR RELIEF</u>
**Violation of the New York Donnelly Act, N.Y. Gen. Bus. Law §340**
**(on Behalf of the New York Subclass)**

240.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

241.     During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

242.     The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

243.     In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

    i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

    ii.    allocating products in the United States in furtherance of their

agreements; and

    iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

244.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

245.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

246.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

    i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout New York; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products when they purchased Frozen Potato Products, or purchased products that were otherwise of lower quality than they would have been absent the Defendants' and their co-conspirators' illegal acts, or were unable to purchase products that they otherwise would have purchased absent the illegal conduct.

ii.    During the Class Period, the Defendants' illegal conduct substantially affected New York commerce.

iii.   As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

247.   By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq.* The conduct set forth above is a *per se* violation of the Act. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq.*

<u>**TWENTIETH CLAIM FOR RELIEF**</u>
**Violation of the North Carolina General Statutes**
**N.C. Gen. Stat. § 75-1, *et seq.***
**(on Behalf of the North Carolina Subclass)**

248.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

249.   During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

250.   The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

251.   In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen

- 64 -

Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

ii. allocating products in the United States in furtherance of their agreements; and

iii. participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

252. The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

253. The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

254. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1.1, *et seq.*

i. The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially

inflated prices for Frozen Potato Products.

ii.    During the Class Period, the Defendants' illegal conduct substantially affected North Carolina commerce.

iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

255.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq.*

<u>**TWENTY-FIRST CLAIM FOR RELIEF**</u>
**Violation of the North Dakota Uniform State Antitrust Act,**
**N.D. Cent. Code § 51-08.1, *et seq.***
(on Behalf of the North Dakota Class)

256.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

257.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

258.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

259.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

i.    participating in meetings and conversations among themselves in the

United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiff and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

ii.     allocating products in the United States in furtherance of their agreements; and

iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

260.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

261.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

262.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

i.      The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and

members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

ii. During the Class Period, the Defendants' illegal conduct had a substantial effect on North Dakota commerce.

iii. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

263. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

## TWENTY-SECOND CLAIM FOR RELIEF
### Violation of the Oregon Antitrust Law,
### Or. Rev. Stat. § 646.705, *et seq.*
### (on behalf of the Oregon Subclass)

264. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

265. During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

266. The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

267. In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

- 68 -

      i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

      ii.    allocating products in the United States in furtherance of their agreements; and

      iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

268.     The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

269.     The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

270.     The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq.*

      i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages Class

were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

    ii.    During the Class Period, the Defendants' illegal conduct had a substantial effect on Oregon commerce.

    iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

271.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

**TWENTY-THIRD CLAIM FOR RELIEF**
**Violation of the Rhode Island Antitrust Act,**
**Rhode Island General Laws §§ 6-36-1, *et seq.***
**(on behalf of the Rhode Island Subclass)**

272.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

273.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

274.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

275.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

    i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiff and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

    ii.    allocating products in the United States in furtherance of their agreements; and

    iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

276.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

277.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

278.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Rhode Island General Laws §§ 6-36-1, *et seq.*

    i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Frozen Potato Product prices

were raised, fixed, maintained and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

ii. During the Class Period, the Defendants' illegal conduct had a substantial effect on Rhode Island commerce.

iii. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

279. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Rhode Island General Laws §§ 6-36-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Rhode Island General Laws §§ 6-36-1, *et seq.*

## TWENTY-FOURTH CLAIM FOR RELIEF
### Violation of the South Dakota Antitrust Statute,
### S.D. Codified Laws § 37-1-3.1, *et seq.*
### (on behalf of the South Dakota Subclass)

280. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

281. During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

282. The contract, combination, or conspiracy consisted of an agreement among the

Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

283. In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

      i. participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiff and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

      ii. allocating products in the United States in furtherance of their agreements; and

      iii. participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

284. The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

285. The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

286. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1, *et seq.*

      i. The Defendants' combination or conspiracy had the following effects: (1)

Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

ii. During the Class Period, the Defendants' illegal conduct had a substantial effect on South Dakota commerce.

iii. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

287. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

## TWENTY-FIFTH CLAIM FOR RELIEF
### Violation of the Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101, *et seq.* (on behalf of the Tennessee Subclass)

288. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

289. During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

290. The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

291. In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

      i. participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

      ii. allocating products in the United States in furtherance of their agreements; and

      iii. participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

292. The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

293. The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

294. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq.*

i. The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

ii. During the Class Period, the Defendants' illegal conduct had a substantial effect on Tennessee commerce.

iii. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

295. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, et seq. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

**TWENTY-SIXTH CLAIM FOR RELIEF**
**Violation of the Utah Antitrust Act,**
**Utah Code Ann. §§ 76-10-3101, *et seq.***
**(on behalf of the Utah Subclass)**

296. Plaintiff incorporate by reference the allegations in the preceding paragraphs.

297. During the Class Period, the Defendants and their co-conspirators engaged in a

continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

298.  The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

299.  In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

   i.  participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiff and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

   ii.  allocating products in the United States in furtherance of their agreements; and

   iii.  participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

300.  The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

301.  The Defendants' anticompetitive acts described above were knowing and willful

and constitute violations or flagrant violations of the following state antitrust statutes.

302. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-3101, *et seq.*

          i. The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Utah; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra- competitive, artificially inflated prices for Frozen Potato Products.

          ii. During the Class Period, the Defendants' illegal conduct had a substantial effect on Utah commerce.

          iii. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

303. By reason of the foregoing, the Defendants' have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-3101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-3101, *et seq.*

**<u>TWENTY-SEVENTH CLAIM FOR RELIEF</u>**
**Violation of the Vermont Consumer Fraud**
**Act, Vt. Stat. Ann. tit. 9, §§ 2451, *et seq.***
**(on behalf of the Vermont Subclass)**

304.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

305.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

306.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

307.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

        i.      participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

        ii.     allocating products in the United States in furtherance of their agreements; and

        iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

308.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize

prices and to allocate products.

309.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

310.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq.*

      i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

      ii.   During the Class Period, the Defendants' illegal conduct had a substantial effect on Vermont commerce.

      iii.   As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

311.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, et seq. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq.*

## TWENTY-EIGHTH CLAIM FOR RELIEF
### Violation of the West Virginia Antitrust Act,

**W. Va. Code § 47-18-1, *et seq.***
**(on behalf of the West Virginia Subclass)**

312.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

313.     During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

314.     The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

315.     In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

> i.     participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiff and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

> ii.     allocating products in the United States in furtherance of their agreements; and

> iii.     participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

316.     The Defendants and their co-conspirators engaged in the actions described above

for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

317. The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

318. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq.*

    i. The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

    ii. During the Class Period, the Defendants' illegal conduct had a substantial effect on West Virginia commerce.

    iii. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

319. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under West Virginia Code §§ 47-18-1, *et seq.*

## TWENTY-NINTH CLAIM FOR RELIEF
### Violation of the Wisconsin Antitrust Act, Wis. Stat. Ann. § 133.01(1), *et seq.*
### (on behalf of the Wisconsin Subclass)

320.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

321.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

322.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

323.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

      i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

      ii.    allocating products in the United States in furtherance of their agreements; and

      iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

324. The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

325. The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

326. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq.*

      i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

      ii.    During the Class Period, the Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

      iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

327. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

328.     Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of the Defendants' unlawful combination, contract, conspiracy and agreement. Plaintiffs and members of the Damages Class have paid more for Frozen Potato Products than they otherwise would have paid in the absence of the Defendants' unlawful conduct. This injury is of the type that the antitrust laws of the above states were designed to prevent and flows from that which makes the Defendants' conduct unlawful.

329.     In addition, the Defendants have profited significantly from the aforesaid conspiracy. The Defendants' profits derived from its anticompetitive conduct come at the expense and detriment of the Plaintiffs and the members of the Damages Class.

330.     Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

## THIRTIETH CLAIM FOR RELIEF
### Violation of the Arkansas Deceptive Trade Practices
### Act, Ark. Code Ann. § 4-88-101, *et seq.*
### (on Behalf of the Arkansas Subclass)

331.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

332.     The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

333.     The Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101, *et seq.*

i.     The Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at

- 85 -

non- competitive and artificially inflated levels, the prices at which Frozen Potato Products were sold, distributed, or obtained in Arkansas and took efforts to conceal its agreements from Plaintiffs and members of the Damages Class.

ii.    The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

iii.    The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products Products price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) Frozen Potato Products Products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

iv.    During the Class Period, the Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

v.    As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiff and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

334.    The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code, § 4-88-107(a) and, accordingly, Plaintiffs and the

members of the Damages Class seek all relief available under that statute.

**THIRTY-FIRST CLAIM FOR RELIEF**
**Violations of California's Unfair Competition Law**
**Cal.  Bus. & Prof. Code § 17200, *et seq.* (the "UCL")**
**(on behalf of the California Subclass)**

335.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

336.    The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

337.    The Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq.*

    i.    During the Class Period, the Defendants marketed, sold, or distributed Frozen Potato Products in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

    ii.    This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from the Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

    iii.    The Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of the Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair,

unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above;

iv.  The Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

v.  The Defendants' acts or practices are unfair to purchasers of Frozen Potato Products in the State of California within the meaning of Section 17200, California Business and Professions Code;

vi.  The Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

vii.  Plaintiffs and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by the Defendants as a result of such business acts or practices.

viii.  The illegal conduct alleged herein is continuing and there is no indication that the Defendants will not continue such activity into the future.

ix.  The unlawful and unfair business practices of the Defendants have caused

and continue to cause Plaintiffs and the members of the Damages Class to pay supra-competitive and artificially-inflated prices for Frozen Potato Products. Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

x. The conduct of the Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

xi. As alleged in this Complaint, the Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by the Defendants' unfair competition. Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by the Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

### THIRTY-SECOND CLAIM FOR RELIEF
**Violation of the Colorado Consumer Protection Act**
**Colorado Rev. Stat. § 6-1-101, *et seq.***
**(on behalf of the Colorado Subclass)**

338. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

339. The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

340. The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Colorado Consumer Protection Act, Colorado Rev. Stat. § 6-1-101, *et seq.*

i. The Defendants engaged in an unfair and deceptive trade practices during

the course of their business dealings, which significantly impacted Plaintiffs as an actual or potential purchaser of the Defendants' goods and which caused Plaintiffs to suffer injury.

ii.   Defendants took efforts to conceal their agreements from Plaintiffs.

iii.  Defendants' unlawful conduct had the following effects in Colorado: (1) price competition for Frozen Potato Products was restrained, suppressed, and eliminated; (2) Frozen Potato Products prices were raised, fixed, maintained, and stabilized at artificially high levels; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Frozen Potato Products.

iv.   During the Class Period, Defendants' illegal conduct substantially affected Colorado commerce and consumers.

341.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Colorado Rev. Stat. § 6- 1-101, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute and as equity demands.

### THIRTY-THIRD CLAIM FOR RELIEF
**Violation of the District of Columbia Consumer Protection Procedures Act,
D.C. Code § 28-3901, *et seq.*
(on behalf of the District of Columbia Subclass)**

342.   Plaintiff incorporates by reference the allegations in the preceding paragraphs.

343.   The Defendants engaged in unfair competition or unfair, unconscionable, deceptive

or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

344.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*

    i.    The Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which Frozen Potato Products were sold, distributed or obtained in the District of Columbia.

    ii.    The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904. Plaintiff were not aware of the Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by the Defendants for Frozen Potato Products. The Defendants had the sole power to set that price and Plaintiff had no power to negotiate a lower price. Moreover, Plaintiff lacked any meaningful choice in purchasing Frozen Potato Products because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiff could avoid the overcharges. The Defendants' conduct with regard to sales of Frozen Potato Products, including its illegal conspiracy to secretly fix the price of Frozen Potato Products at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited the Defendants at the expense of Plaintiff and the public. The Defendants took grossly unfair advantage of Plaintiff. The suppression

of competition that has resulted from the Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for Frozen Potato Products.

iii. The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Frozen Potato Product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and the Damages Class were deprived of free and open competition; and (4) Plaintiff and the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

345. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury. The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

## THIRTY-FOURTH CLAIM FOR RELIEF
### Violation of the Florida Deceptive and Unfair Trade Practices Act,
### Fla. Stat. § 501.201, *et seq.*
### (on Behalf of the Florida Subclass)

346. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

347. The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

348. The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

    i. The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Florida; (2) Frozen Potato Product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

    ii. During the Class Period, the Defendants' illegal conduct substantially affected Florida commerce and consumers.

    iii. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

349. The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly, Plaintiffs and members

of the Damages Class seek all relief available under that statute.

**THIRTY-FIFTH CLAIM FOR RELIEF**
**Violation of Hawaii Unfair and Deceptive Trade Practices Act**
**Haw. Rev. Stat. § 480-2**
**(on behalf of the Hawaii Subclass)**

350.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

351.    The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

352.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes § 480-2.

           i.    The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Frozen Potato Product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

           ii.    During the Class Period, the Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

           iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

353.    The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Revised Statutes § 480-2, and, accordingly, Plaintiffs and

members of the Damages Class seek all relief available under that statute.

## THIRTY-SIXTH CLAIM FOR RELIEF
### Violation of the Massachusetts Consumer Protection Act,
### Mass. Gen. Laws ch. 93A § 1, *et seq.*
### (on behalf of the Massachusetts Subclass)

354. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

355. The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

356. The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Mass. G.L. c. 93A, §2.

    i.    The Defendants were engaged in trade or commerce as defined by G.L. c. 93A.

    ii.    The Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels, the prices at which Frozen Potato Products were sold, distributed, or obtained in Massachusetts and took efforts to conceal its agreements from Plaintiffs and members of the Damages Class.

    iii.    The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) Frozen Potato Product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially

inflated prices for Frozen Potato Products.

iv.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class were injured and are threatened with further injury.

v.    The Defendants have been or will be served with a demand letter in accordance with G.L. c. 93A, § 9, or, upon information and belief, such service of a demand letter was unnecessary due to the Defendants not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth.

vi.    By reason of the foregoing, the Defendants engaged in unfair competition and unfair or deceptive acts or practices, in violation of G.L. c. 93A, §2. The Defendants and their co-conspirators' violations of Chapter 93A were knowing or willful, entitling Plaintiffs and members of the Damages Class to multiple damages.

### THIRTY-SEVENTH CLAIM FOR RELIEF
**Violation of the Minnesota Consumer Fraud Act,**
**Minn. Stat. § 325F.68, *et seq.***
**(on Behalf of the Minnesota Subclass)**

357.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

358.    The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

359.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

360.    The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

361.    Defendants have engaged in unfair competition or unfair, unconscionable, or

deceptive acts or practices in violation of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*

    i.    The Defendants engaged in unfair and deceptive trade practices during the course of their business dealings, which significantly impacted Plaintiffs as purchasers of the Defendants' goods, and which caused Plaintiffs to suffer injuries.

    ii.    The Defendants took efforts to conceal their agreements from Plaintiffs and the members of the Damages Class.

    iii.    The Defendants' unlawful conduct had the following effects in Minnesota: (1) price competition for Frozen Potato Products was restrained, suppressed, and eliminated; (2) Frozen Potato Product prices were raised, fixed, maintained, and stabilized at artificially high levels; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Frozen Potato Products.

    iv.    During the Class Period, the Defendants' illegal conduct substantially affected Minnesota commerce and consumers.

    v.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325D.43, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute and as equity demands.

**THIRTY-EIGHTH CLAIM FOR RELIEF**
**Violation of the Missouri Merchandising Practices Act,**
**Mo. Ann. Stat. § 407.010, *et seq.***
**(on Behalf of the Missouri Subclass)**

362.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

363.     The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

364.     The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*

     i.    Plaintiffs and the Damages Class purchased Frozen Potato Products for use in their restaurant businesses purposes.

    ii.    The Defendants engaged in the conduct described herein in connection with the sale of Frozen Potato Products in trade or commerce in a market that includes Missouri.

   iii.    The Defendants agreed to, and did in fact, affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which Frozen Potato Products were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of the Damages Class.

   iv.    The Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Damages Class concerning its unlawful activities and artificially inflated prices for Frozen Potato Products. It concealed, suppressed, and omitted facts that would have been important to

Plaintiffs and members of the Damages Class as they related to the cost of Frozen Potato Products they purchased.

v.    The Defendants misrepresented the real cause of price increases and/or the absence of price reductions in Frozen Potato Products by making public statements that were not in accord with the facts.

vi.    The Defendants' statements and conduct concerning the price of Frozen Potato Products were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Damages Class to believe that they were purchasing Frozen Potato Products at prices established by a free and fair market.

vii.    The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Missouri; (2) Frozen Potato Product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

viii.    The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

ix.    As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Damages Class suffered ascertainable loss of money or property.

x.   Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

### THIRTY-NINTH CLAIM FOR RELIEF
**Violation of the Montana Consumer Protection Act of 1973**
**Mont. Code, §§ 30-14-101, *et seq.***
**(on Behalf of the Montana Subclass)**

365.   Plaintiff incorporates by reference the allegations in the preceding paragraphs.

366.   The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

367.   The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Consumer Protection Act of 1973, Mont. Code, §§ 30-14-101, *et seq.*

i.   The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Montana; (2)  Frozen Potato Product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiff and members of the Damages Class

were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

ii. During the Class Period, The Defendants' illegal conduct substantially affected Montana commerce and consumers.

iii. As a direct and proximate result of The Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

iv. The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-101, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

### FOURTIETH CLAIM FOR RELIEF
**Violation of the Nebraska Consumer Protection Act,**
**Neb. Rev. Stat. § 59-1601, *et seq.***
**(on behalf of the Nebraska Subclass)**

368. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

369. The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

370. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.*

i. Defendants' unlawful conduct had the following effects in Nebraska: (1) price competition for Frozen Potato Products was restrained, suppressed, and eliminated; (2) Frozen Potato Product prices were raised, fixed,

maintained, and stabilized at artificially high levels; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Frozen Potato Products.

ii. During the Class Period, Defendants marketed, sold, or distributed Frozen Potato Products in Nebraska, and Defendants' illegal conduct substantially affected Nebraska commerce and consumers.

iii. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

## <u>FORTY-FIRST CLAIM FOR RELIEF</u>
### Violation of the New Mexico Unfair Practices Act,
### N.M. Stat. Ann. §§ 57-12-1, *et seq.*
### (on Behalf of the New Mexico Subclass)

371. Plaintiff incorporates by reference the allegations in the preceding paragraphs. The Defendants engaged in unfair competition or unfair, unconscionable,

372. deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

373. The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq.*

i. The Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which Frozen Potato Products were sold, distributed or obtained in New Mexico and took efforts

to conceal its agreements from Plaintiff and members of the Damages Class.

ii. The aforementioned conduct on the part of the Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, *inter alia*, resulted in a gross disparity between the value received by Plaintiff and the members of the Damages Class and the prices paid by them for Frozen Potato Products as set forth in N.M.S.A., § 57-12- 2E. Plaintiff was not aware of the Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by the Defendants for Frozen Potato Products. The Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiff lacked any meaningful choice in purchasing Frozen Potato Products because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiff could avoid the overcharges. the Defendants' conduct with regard to sales of Frozen Potato Products, including its illegal conspiracy to secretly fix the price of Frozen Potato Products at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited the Defendants at the expense of Plaintiff and the public. The Defendants took grossly unfair advantage of Plaintiff. The suppression of competition that has resulted from the Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross

disparity between the price paid and the value received for Frozen Potato Products.

iii. The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Frozen Potato Product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

iv. During the Class Period, the Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

v. As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiff and the members of the Damages Class have been injured and are threatened with further injury.

vi. the Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

### **FORTY-SECOND CLAIM FOR RELIEF**
**Violation of Section 349 of the New York General Business Law
(on Behalf of the New York Subclass)**

374. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

375. The Defendants engaged in unfair competition or unfair, unconscionable, deceptive

or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

376.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

    i.    The Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Frozen Potato Products were sold, distributed or obtained in New York and took efforts to conceal its agreements from Plaintiffs and members of the Damages Class.

    ii.    The Defendants and their co-conspirators made public statements about the prices of Frozen Potato Products and products containing Frozen Potato Products that the Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for Frozen Potato Products and products containing Frozen Potato Products; and the Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

    iii.    Because of the Defendants' unlawful trade practices in the State of New York, New York consumer class members who indirectly   purchased Frozen Potato Products were misled to believe that they were paying a fair price for Frozen Potato Products or the price increases for Frozen Potato Products were for valid business reasons; and similarly situated

consumers were potentially affected by the Defendants' conspiracy.

iv. The Defendants knew that its unlawful trade practices with respect to pricing Frozen Potato Products would have an impact on New York consumers and not just the Defendants' direct customers.

v. The Defendants knew that their unlawful trade practices with respect to pricing Frozen Potato Products would have a broad impact, causing consumer class members who indirectly purchased Frozen Potato Products to be injured by paying more for Frozen Potato Products than they would have paid in the absence of the Defendants' unlawful trade acts and practices.

vi. The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

vii. The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout New York; (2) Frozen Potato Product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

viii.    During the Class Period, the Defendants marketed, sold, or distributed Frozen Potato Products in New York, and the Defendants' illegal conduct substantially affected New York commerce and consumers.

ix.    During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates dominated and controlled, manufactured, sold and/or distributed Frozen Potato Products in New York.

x.    Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

<u>**FORTY-THIRD CLAIM FOR RELIEF**</u>
**Violation of the North Carolina Unfair Trade and Deceptive Practices Act,**
**N.C. Gen. Stat. § 75-1, *et seq.***
**(on Behalf of the North Carolina Subclass)**

377.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

378.    The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

379.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1, *et seq.*

i.    The Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Frozen Potato Products were sold, distributed or obtained in North Carolina and took efforts to conceal its agreements from Plaintiffs and members of the Damages Class.

ii.    The Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by the Defendants to cover up its illegal acts. Secrecy was integral to the formation, implementation and maintenance of the

Defendants' price-fixing conspiracy. The Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware. The Defendants and their co-conspirators publicly provided pre-textual and misrepresentativejustifications regarding their price increases. The Defendants' public statements concerning the price of Frozen Potato Products created the illusion of competitive pricing controlled by market forces rather than supra-competitive pricing driven by the Defendants' illegal conspiracy. Moreover, the Defendants deceptively concealed its unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders, conducting meetings and conversations in secret, confining the plan to a small group of higher-level officials at each company and avoiding the creation of documents which would reveal the antitrust violations.

iii.    The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

iv.    The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Frozen Potato Product prices were raised, fixed, maintained, and stabilized at artificially high levels

throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

    v.     During the Class Period, the Defendants marketed, sold, or distributed Frozen Potato Products in North Carolina, and the Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

    vi.    During the Class Period, the Defendants, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Frozen Potato Products in North Carolina.

380.    Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

### FORTY-FOURTH CLAIM FOR RELIEF
**Violation of the Puerto Rico Antitrust Statute,
P.R. Laws Ann. tit. 10 §§ 258, *et seq.*
(on Behalf of the Puerto Rico Subclass)**

381.    Plaintiff incorporate by reference the allegations in the preceding paragraphs.

382.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

383.    The contract, combination, or conspiracy consisted of an agreement among the

Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

384. In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

      i. participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiff and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

      ii. allocating products in the United States in furtherance of their agreements; and

      iii. participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

385. The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

386. The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

387. The Defendants have entered into an unlawful agreement in restraint of trade in violation of P.R. Laws Ann. tit. 10 §§ 258, *et seq.*

      i. The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and

eliminated throughout Puerto Rico; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Puerto Rico; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra- competitive, artificially inflated prices for Frozen Potato Products.

ii. During the Class Period, the Defendants' illegal conduct had a substantial effect on Rhode Island commerce.

iii. iAs a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

388.   By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of P.R. Laws Ann. tit. 10 §§ 258, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under P.R. Laws Ann. tit. 10 §§ 258, *et seq.*

**FORTY-FIFTH CLAIM FOR RELIEF**
**Violation of Rhode Island Deceptive Trade Practices Act,**
**R.I. Gen Laws § 6-13.1-1, *et seq.***
**(on Behalf of the Rhode Island Subclass)**

389.   Plaintiff incorporate by reference the allegations in the preceding paragraphs.

390.   The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

391.   The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

i.     Members of this Damages Class purchased Frozen Potato Products for use in their restaurant or other prepared food service business.

ii.     The Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Frozen Potato Products were sold, distributed, or obtained in Rhode Island.

iii.     The Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning its unlawful activities and artificially inflated prices for Frozen Potato Products. The Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the a reasonable consumer, it breached that duty by its silence. The Defendants misrepresented to all consumers during the Class Period that its Frozen Potato Product prices were competitive and fair.

iv.     The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Frozen Potato Product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

v.     As a direct and proximate result of the Defendants' violations of law,

Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of the Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by the Defendants' willful and deceptive conduct, as described herein.

vi.     The Defendants' deception, including its affirmative misrepresentations and omissions concerning the price of Frozen Potato Products, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing Frozen Potato Products at prices set by a free and fair market. The Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Damages Class as they related to the cost of Frozen Potato Products they purchased. The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

**FORTY-SIXTH CLAIM FOR RELIEF**
**Violation of the South Carolina Unfair Practices Act,**
**S.C. Code Ann. § 39-5-10 *et seq.***
**(on behalf of the South Carolina Subclass)**

392.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

393.     The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

394.     The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code

Ann. §§ 39-5-10, *et seq.*

    i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) Frozen Potato Product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

    ii.    During the Class Period, the Defendants' illegal conduct had a substantial effect on South Carolina commerce.

    iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

    iv.    The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

### FORTY-SEVENTH CLAIM FOR RELIEF
**Violation of the South Dakota Deceptive Trade Practices
and Consumer Protection Law, S.D. Codified Laws § 37-24, *et seq.*
(on Behalf of the South Dakota Subclass)**

395.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

396.    The Defendants engaged in unfair competition or unfair, unconscionable, deceptive

or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

397.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the South Dakota Deceptive Trade Practices and Consumer Protection Statute, S.D. Codified Laws § 37-24, *et seq.*

    i.    The Defendants agreed to, and did in fact, act in restraint of trade or commerce in South Dakota, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Frozen Potato Products were sold, distributed, or obtained in South Dakota.

    ii.    The Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning the Defendants' unlawful activities and artificially inflated prices for Frozen Potato Products.

    iii.    The Defendants misrepresented to all purchasers during the Class Period that the Defendants' Frozen Potato Products were competitive and fair.

    iv.    The Defendants' unlawful conduct had the following effects in South Dakota: (1) price competition for Frozen Potato Products was restrained, suppressed, and eliminated; (2) Frozen Potato Products were raised, fixed, maintained, and stabilized at artificially high levels; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for Frozen Potato Products.

    v.    The Defendants' illegal conduct substantially affected South Dakota

commerce and those who purchased Frozen Potato Products in South Dakota.

vi.     As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of the Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by the Defendants' willful and deceptive conduct, as described herein.

vii.    Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Frozen Potato Products, misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Frozen Potato Products at prices set by a free and fair market.

viii.   Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Damages Class as they related to the cost of Frozen Potato Products they purchased.

ix.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws § 37-24, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

## FORTY-EIGHTH CLAIM FOR RELIEF
### Violation of the Virginia Consumer Protection Act,
### Va. Code Ann. § 59.1-196, *et seq.*
### (on Behalf of the Virginia Subclass)

398.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs. 62

399.    The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

400.    By reason of the conduct alleged herein, Defendants have violated Va. Code Ann. § 59.1-196, *et seq.*

401.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Virginia.

402.    Defendants' conduct amounted to a fraudulent act or practice committed by a supplier in connection with a consumer transaction.

403.    Defendants' unlawful conduct substantially affected Virginia's trade and commerce.

404.    Defendants' conduct was willful.

405.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiffs and the members of the Virginia Class have been injured in their business or property and are threatened with further injury.

406.    By reason of the foregoing, Plaintiffs and the members of the Virginia Class is entitled to seek all forms of relief, including treble damages or $1000 per violation, whichever is greater, plus reasonable attorneys' fees and costs under Va. Code Ann. § 59.1-204(A), *et seq.*

## FORTY-NINTH CLAIM FOR RELIEF
**Violation of the West Virginia Consumer Credit and Protection Act,**
**W. Va. Code § 46A-6-101, *et seq.***
**(on behalf of the West Virginia Subclass)**

407.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

408.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the West Virginia Consumer Credit and Protection Act, W.Va. Code § 46A-6-101, *et seq.*

    i.    The Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes West Virginia, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Frozen Potato Products were sold, distributed, or obtained in West Virginia.

    ii.    The Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning the Defendants' unlawful activities and artificially inflated prices for Frozen Potato Products.

    iii.    The Defendants affirmatively misrepresented to all purchasers during the Class Period that the Defendants' Frozen Potato Product prices were competitive and fair. Defendants' unlawful conduct had the following effects in West Virginia: (1) price competition for Frozen Potato Products was restrained, suppressed, and eliminated; (2) Frozen Potato Product prices were raised, fixed, maintained, and stabilized at artificially high levels; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for Frozen Potato

Products. The Defendants' illegal conduct substantially affected West Virginia commerce and purchasers of Frozen Potato Products.

iv.     As a direct and proximate result of the Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of the Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by the Defendants' willful and deceptive conduct, as described herein.

v.     The Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Frozen Potato Products, misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Frozen Potato Products at prices set by a free and fair market.

vi.     The Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Damages Class as they related to the cost of the Frozen Potato Products they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W.Va. Code § 46A-6-101, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

### FIFTIETH CLAIM FOR RELIEF
**Violation of the Hawaii Antitrust Act,**
**Haw. Rev. Stat. § 480-4**
**(on behalf of the Hawaii Subclass)**

409.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

410. During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

411. The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

412. In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

      i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

     ii.    allocating products in the United States in furtherance of their agreements; and

    iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

413. The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

414. The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

415. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Hawaii Rev. Stat. § 480-4.

      i. The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Frozen Potato Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

      ii. During the Class Period, the Defendants' illegal conduct substantially affected Hawaii commerce.

      iii. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

416. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Hawaii Rev. Stat. § 480-4. Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under the Hawaii Antitrust Act.

<u>**FIFTY-FIRST CLAIM FOR RELIEF**</u>
**Unjust Enrichment**
**(On Behalf of the Nationwide Class**
**or, Alternatively, on Behalf of Each State Class)**

417. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

Plaintiffs bring this claim under the laws of each of the Indirect Purchaser States.

418.    As a result of their unlawful conduct described above, the Defendants have and will continue to be unjustly enriched. The Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Frozen Potato Products.

419.    The Defendants have benefited from its unlawful acts and it would be inequitable for the Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs and the members of the Damages Class for Frozen Potato Products.

420.    Plaintiffs and the members of the Damages Class are entitled to the amount of the Defendants' ill-gotten gains resulting from its unlawful, unjust, and inequitable conduct.

421.    Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a *pro rata* basis.

422.    Pursuit of any remedies against the firms from which Plaintiffs and the members of the Damages Class purchased Frozen Potato Products subject to the Defendants' conspiracy would have been futile.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment on their behalf and on behalf of the Classes defined herein, by adjudging and decreeing that:

A.    This action may proceed as a class action, with Plaintiffs serving as the Class Representatives and their counsel serving as Class Counsel;

B.    Defendants have contracted, combined, and conspired in violation of the Sherman Act and various state laws;

C.    Plaintiffs and the Classes have been injured in their business and property as a

result of Defendants' violations;

D.      Plaintiffs and the Classes are entitled to treble damages (*i.e.,* three times overcharges) or the maximum damage allowed under the relevant state statutes in an amount to be determined at trial, plus interest, in accordance with law;

E.      Plaintiffs and the Classes are entitled to equitable relief suitable to remedy Defendants' past and ongoing restraint of trade, including:

    i.      A judicial determination declaring the rights of Plaintiffs and the Classes, and the corresponding responsibilities of Defendants; and

    ii.     Issuance of a permanent injunction against Defendants and their parents, subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents, and employees thereof and all other persons acting or claiming to act on their behalf from violations of the law as alleged herein.

F.      Defendants are jointly and severally responsible financially for the costs and expenses of a Court-approved notice program through post and media designed to give immediate notification of this action and their rights to the members of the Classes; and

G.      Plaintiffs and the Classes recover their costs of this suit, including reasonable attorneys' fees as provided by law; and Plaintiffs and the Classes receive such other or further relief as may be just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

Dated: February 20, 2025                    Respectfully submitted,

                                             */s/ Carl V. Malmstrom*
                                            Carl V. Malmstrom
                                            **WOLF HALDENSTEIN ADLER**
                                            **FREEMAN & HERZ LLC**
                                            111 W. Jackson Blvd., Suite 1700
                                            Chicago, Illinois 60604
                                            (312) 984-0000
                                            malmstrom@whafh.com

                                            Thomas H. Burt
                                            Kate McGuire
                                            **WOLF HALDENSTEIN ADLER**
                                            **FREEMAN & HERZ LLP**
                                            270  Madison  Avenue
                                            New  York,  NY  10016
                                            (212) 545-4600
                                            burt@whafh.com
                                            mcguire@whafh.com

                                            Blaine Finley
                                            **FINLEY PLLC**
                                            1455 Pennsylvania Avenue, NW
                                            Suite 400
                                            Washington, D.C. 20004
                                            Tel.: 281-723-7904
                                            bfinley@finley-pllc.com

                                            Michelle S. Carino
                                            **GREENWICH LEGAL**
                                            **ASSOCIATES, LLC**
                                            881 Lake Avenue
                                            Greenwich, CT 06831
                                            (203) 622.6001
                                            mcarino@grwlegal.com